

Emre M. Polat            Grace Hyun, Esq.
Admitted NY & NJ Bars    Admitted NY & NJ Bars
Tel.:(212) 480-4500      Tel.:(212) 480-4500
emre@polatlawyers.com    grace@polatlawyers.com

**VIA ECF**

September 27, 2019

Honorable Katharine H. Parker, U.S.M.J.
United States. District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    <u>Lin Cui v. JDBN LLC d/b/a Domodomo et al.
               Civil Action No. 19-CV-3959 GHW-KHP</u>

Dear Judge Parker:

        This office represents named plaintiff, Lin Cui, with respect to his claims against Defendants JDBN LLC d/b/a Domodomo ("Domodomo"), Jae Park, and Brian Kim (collectively "Defendants"). This letter is submitted jointly with Jesse Barton, Esq., counsel for Defendants, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

        Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement is a result of several months of arms-length negotiations, an exchange of documents, and a court-ordered mediation attended by the undersigned attorneys and the parties. A copy of the Settlement Agreement is attached as **Exhibit A**. We respectfully submit that the Settlement Agreement constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Introduction and Procedural History**

        Plaintiff alleged that he was a former sushi chef at Defendants' restaurant located at 138-140 W. Houston Street New York, New York 10012 and was not properly compensated. Plaintiff commenced this action by filing a Collective and Class Action Complaint against Defendants alleging unpaid overtime premiums under the FLSA, 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL"), §§ 650 *et seq.*, as well as unpaid spread-of-hours premiums, and wage notice and wage statement violations under the NYLL. (*See* Dkt. No. 1). On May 23, 2019, this matter was referred to mediation pursuant to the SDNY Mediation program (Dkt. No. 17). On June 24, 2019 Defendants filed their Answer, denying all material allegations in Plaintiff's Complaint. (Dkt. No. 24). Thereafter, mediator Alfred Feliu, Esq. was assigned as the mediator and the parties worked diligently to exchange documents and prepare for mediation discussions, which took place on August 26, 2019. As a result of arms-length negotiations before and during the mediation, the parties reached a settlement.

## II. Factual Background

Plaintiff was employed as a sushi chef at Domodomo restaurant located at 138-140 W. Houston Street New York, New York 10012 from December 2017 until on or about February 2019. Plaintiff alleges that he would work seven (7) days per week, from approximately 1:00 p.m. to 11:00 p.m. From December 25, 2017 to June 24, 2018, Plaintiff alleges he worked over sixty (60) hours per week. From June 25, 2018 to December 4, 2018, Plaintiff alleges he worked over sixty (60) hours per week. From December 4, 2018 to February 2019, Plaintiff worked over sixty-three (63) hours per week.

Plaintiff further alleges that he was paid a flat salary consisting of $419.22 in check and $600.00 in cash in 2017; $587.15 in check and $430.00 in cash in 2018; and $988.40 in check in 2019.

Defendants have vigorously disputed Plaintiff's schedule, days and hours worked. They have produced several witness affidavits from both current and former employees of their restaurant that significantly contradict Plaintiff's claims. Defendants intend on calling these witnesses at trial in order to dispute the entirety of or minimalize any potential liability. After weighing the risks of trial and costs of further litigation, the parties have reached an amicable agreement.

## III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $55,000.00 (the "Settlement Amount"). Of that amount, $18,333.31 is payable to Plaintiff's counsel as attorneys' fees which represents a rate of 33% and includes $625.00 ($400 filing and $225 service) in expenses and costs for filing and service of process, which have been waived as a courtesy to Plaintiff. After subtracting Plaintiff's attorneys' fees, the remaining $36,666.69 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

## IV. Plaintiff's Anticipated Recovery Upon A Favorable Verdict

Plaintiff created a damages analysis based on Plaintiff's best recollection and without having initially received and reviewed documents exchanged by Defendants. The analysis assume that all facts alleged by Plaintiff are entirely correct. Plaintiff's unpaid overtime claim, which was calculated by multiplying the full minimum wage rate or Plaintiff's hourly rate, whichever was higher, by 0.5 and multiplying the resulting overtime premium by the number of hours that Plaintiff worked in excess of forty (40) each week, Plaintiff calculated a total of $55,656.75. Plaintiff's calculations for spread-of-hours damages, which were calculated by multiplying the number of days each week in which Plaintiff worked a shift or split-shift in excess of ten (10) hours by the applicable minimum wage, totaled $4,100.00. With liquidated damages, interest, as well as statutory damages under NYLL 195, the total estimated damages on a *best-case scenario* was $130,905.23 This estimated analysis represents a complete favorable outcome at trial for Plaintiff.

**V.     The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Alleged Substantial Damages**

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Plaintiff alleges that throughout his respective employment period, he received a flat salary that did not compensate him at the statutory overtime rate for all hours he worked for weeks in which he worked overt forty (40) hour per week. Specifically, Plaintiff alleges that he typically worked 60 hours per week.

Defendants have vigorously denied Plaintiff's allegations, including his claims for unpaid overtime premiums and days and numbers of hours that he claims to have worked. Defendants produced witness affidavits from current and former employees in order to contest that Plaintiff worked 60 hours per week. Defendants claim that the testimony of these witnesses would entirely substantiate their defenses and prove that Plaintiff did not work nearly the hours alleged.  While Plaintiff would contest the credibility of these witnesses, Plaintiff recognizes that their testimony could significantly limit the amount of damages Plaintiff could recover at trial.

Due to the fact-intensive nature of the Plaintiff's claims, it is likely that substantive answers to these disputed issues would not be resolved until after extensive additional written and deposition discovery, followed by summary judgment briefing, if not a trial. Plaintiff intended to file a motion for conditional certification of a FLSA collective action followed by a Rule 23 class certification motion and dispositive motion on certain of the disputed legal issues as described above. Defendants would strongly oppose such motions and would have sought to decertify the collective action. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding resolution of Plaintiff's claims.

Another inherit litigation risk is Defendants' ability to pay a judgment if one were obtained by Plaintiff. Defendants operate a small sushi restaurant and have only been in business for a few years. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiff prefers to settle now, on an individual basis, for an amount that he would be guaranteed to receive under the terms of the settlement.

Plaintiff wishes to avoid the risk of further litigating his claims. There is an inherent risk in going to trial of being unable to establish any liability. A trial on the merits would involve significant risks because of the fact-intensive nature of proving liability under the FLSA. Plaintiff believes the amount of $55,000 is a fair result, obtaining a substantial sum for his alleged back wages while eliminating the risks of trial. Further litigation would be highly risky to Plaintiff as he would face the possibility of receiving a smaller amount than what is allocated to him in the settlement.

**VI.    Plaintiff's Attorney's Fees and Expenses**

The portion of the settlement amount that Plaintiff seeks as attorney's fees ($18,333.31) represents 1/3 of the settlement amount. Total expenses of $625 have been waived as a courtesy to the Plaintiff. The parties submit that the $18,333.31 in legal fees is fair, reasonable, and consistent with the range of fees typically awarded in this Circuit in FLSA matters, which takes into account the risks in litigation. *See Castaneda v. My Belly's Playlist LLC* No. 15 Civ. 1324 (S.D.N.Y Aug 17, 2015); *Kochilas v. National Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. 2015) (standard one-third contingent amount is "consistent with the trend in this Circuit"); *Nojera v. Royal Bedding Co., LLC*, 2015 WL 3540719 at *3 (E.D.N.Y. 2015) (noting that one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases"). Should the Court deem that a lodestar analysis is necessary, counsel will gladly supplement this fairness submission.

A brief biography of Plaintiff's attorneys who performed work in this matter is as follows:

> Emre Polat, Esq. is the principal attorney of Emre Polat, PLLC f/k/a Polat Law Group, PLLC and has been admitted to practice in this Circuit since 2011. His work is billed at $375 per hour. Mr. Polat has exclusively practiced employment law, including wage and hour litigation, in this Circuit upon admission to the bar. He commenced employment at a reputable Plaintiff-side employment law firm in 2010 and thereafter also practiced employment defense-side litigation at a regional employment defense law firm, representing employers in the defense of employment matters, including wage and hour. Mr. Polat regularly represents employees and employers on FLSA matters in this Circuit. He graduated from Hofstra University School of Law in 2010 and is admitted to the state bars in New York and New Jersey; SDNY, EDNY, 2nd Circuit Court of Appeals, and the United States Supreme Court.

> Grace Hyun, Esq. is an attorney in good standing with the New York State (admitted in 2011) and New Jersey State (admitted in 2010) Bars, the District Court of New Jersey (admitted in 2010), and the Southern and Eastern District Courts of New York (admitted in 2011 and 2014, respectively). Ms. Hyun has worked extensively in the field of employment litigation (including wage and hour), in both state and federal courts, on both the plaintiff and management side. Her rate is $325.00 per hour.

Accordingly, the parties submit that the fees are reasonable under the circumstances of this matter given the amount of time counsel has spent in obtaining a favorable resolution for Plaintiff and the risks inherit in contingency matters.

## VII. The Parties Believe that the Settlement Is Fair and Reasonable

Plaintiff has been represented by counsel throughout this litigation and was present during the mediation and agreed to the settlement amount and terms. Accordingly, Plaintiff's interests have thus been adequately safeguarded.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over several months, including a mediation with Alfred Feliu, Esq. of the SDNY Mediation Program. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiff's unpaid wages. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

Very truly yours,

**EMRE POLAT, PLLC**

*/s/ Emre Polat*
_____

Emre Polat, Esq.
Grace Hyun, Esq.

cc:   Jesse Barton, Esq.
      *Attorneys for Defendants*
      (via ECF)